```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X   For Online Publication Only
GARY MURPHY,
                                                                          **ORDER**
                                                       Plaintiff,         17-CV-0916 (JMA)

                    -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                                                       Defendant.
----------------------------------------------------------------------X
```

**APPEARANCES**

    Christopher J. Bowes, Esq.
    54 Cobblestone Drive
    Shoreham, NY 11786
    *Attorney for Plaintiff*

    Candace Scott Appleton
    United States Attorney's Office, EDNY
    271 Cadman Plaza East
    Brooklyn, NY 11201
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

    Plaintiff Gary Murphy ("Plaintiff") seeks review of the final decision by the Commissioner of Social Security, reached after a hearing before an administrative law judge, denying Plaintiff disability insurance benefits under Title II of the Social Security Act (the "Act"). The case is before the Court on the parties' cross-motions for judgment on the pleadings. For the reasons discussed herein, Plaintiff's motion for judgment on the pleadings is GRANTED in part and DENIED in part, the Commissioner's cross-motion is DENIED, and the case is REMANDED for proceedings consistent with this opinion.

FILED
CLERK

3/7/2019 12:00 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

# I. BACKGROUND

## A. Procedural History

On September 9, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability as of April 13, 2011, due to bilateral knee impairments, cervical and lumbar radiculopathy, nasal polyps, chronic sinusitis, cough, and obstructive sleep apnea. (Tr. 174–75, 186.[1]) Following denial of his application, Plaintiff requested a hearing and appeared with his attorney for an administrative hearing before Administrative Law Judge Andrew S. Weiss (the "ALJ") on June 2, 2015. (Tr. 62–81.)

In a decision dated June 24, 2015, the ALJ denied Plaintiff's claim, finding that he was not disabled under the Act. (Tr. 39–61.) Plaintiff timely filed a request for review before the Appeals Council. (Tr. 5–38.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 13, 2016. (Tr. 1–4.) This appeal followed. (ECF No. 1.)

## B. Plaintiff's Background and Testimony

Plaintiff was born on December 11, 1970 and was 42 years old when he filed the instant application for disability insurance benefits. (Tr. 174.) Plaintiff indicated that he has a college education and worked as a police officer from August 1993 until April 2011. (See Tr. 187.)

At an administrative hearing held on June 2, 2015, Plaintiff testified that he left his job because of a work-related left knee injury that made him unable to perform his duties as a police officer. (Tr. 65–66, 69.) Plaintiff has had problems with his back, neck, left shoulder, and left hand since the injury. (Tr. 67.) Plaintiff said that he could not stay in one spot for long and had to stand up every 15 to 20 minutes and that he needed and hourly break of 5 minutes in order to

---

[1] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 25.)

stretch. (Tr. 68, 79.) He said he needs to lie down during the day because sitting causes pain in his neck and back. (Tr. 68.) Treatment of his neck and back involved physical therapy three times per week, massage, traction, exercise, and use of a Transcutaneous Electrical Nerve Stimulation (TENS) unit. (Tr. 68–69.) He also applies ice and heat to his knees and takes naps during the day because he does not sleep well at night. (Tr. 69.) He recently bought an adjustable bed with a zero-gravity position that took the weight off his back. (Id.) Plaintiff had never had back or neck epidural injections. (Tr. 73.) He stated that his doctors did not want to administer epidural injections because they said "it would do more damage than good." (Id.) Plaintiff also testified that pain in his left hand, elbow, and shoulder make it difficult to open a package, lift a cup of coffee, turn a doorknob, or reach. (Tr. 70–71.) He said that he could drive a car, but that he had difficulty sitting and turning his neck. (Tr. 71–72.) Plaintiff lives with his wife and said that she helped a lot, but that he was still able to prepare meals in the microwave and toaster oven. (Tr. 70.)

**C. Relevant Medical Evidence**

   **1. Treatment Records**

Plaintiff's treatment records include, inter alia, self-reported complaints of continued neck, back, and bilateral knee pain. (See Tr. 262, 264–65, 292–319, 384–85, 398–409, 416–17.)

Treatment records also refer to Plaintiff's MRIs and other objective medical examinations. An MRI of Plaintiff's left knee performed in August 2007 showed a horizontal tear of the posterior horn of the medial meniscus. (Tr. 252.) Another MRI of Plaintiff's left knee performed in January 2010 also showed a tear at the posterior horn of the medial meniscus, joint effusion, and signal abnormality of the medial tibial plateau. (Tr. 253.) In October 2013, Plaintiff had MRIs of both knees, the lumbar spine, and the temporomandibular joint. An MRI of Plaintiff's right knee revealed joint fluid, sprain or strain in the lateral collateral ligament, mild to moderate soft tissue

3

swelling anterior to the patella, and a partial tear of the lateral reticulum. (Tr. 374–76.) An MRI of Plaintiff's left knee revealed mild soft tissue swelling, joint fluid, and a focal tear at the posterior horn of the medial meniscus. (Tr. 377–79.) An MRI of Plaintiff's lumbar spine revealed posterior disc bulging and posterior disc herniation. (Tr. 372–73.) An MRI of Plaintiff's temporomandibular joints revealed a decreased range of motion of the right condylar head right meniscus going from closed to open mouth but no displacement of the meniscus. (Tr. 423–24.) A November 2013 MRI of the cervical spine showed herniated discs, cord compression, straightening of the normal curvature of the cervical spine, and mild scoliosis. (Tr. 380–82.)

A June 2013 echocardiogram revealed normal findings. (Tr. 254.) A December 2014 echocardiogram revealed mild concentric left ventricular hypertrophy, normal left ventricular function. (Tr. 391–92.) A June 2014 EMG revealed evidence of left 5-S1 lumbosacral radiculopathy. (Tr. 387–90.)

**2. Mitchell Goldstein, M.D.**

On May 11, 2015, Dr. Goldstein completed a medical assessment, based on his treatment records and objective medical examinations, in which he opined that Plaintiff was limited to sitting less than four hours in an eight-hour workday, to standing and walking less than two hours, and to lifting no more than five pounds. (T. 284–85.) He also opined that Plaintiff was not able to navigate on uneven terrain and that Plaintiff would need frequent breaks and bed rest during the day. (Tr. 285.) Finally, he opined that Plaintiff would need more than two days off from work each month. (Id.)

On May 26, 2015, Dr. Goldstein completed a narrative report, noting that he has treated Plaintiff since April 2013 for bilateral knee, neck, and lower back pain. (Tr. 419–22.) He treated Plaintiff on a bimonthly basis in 2013, 2014, and 2015. (Tr. 420–21.) Plaintiff was initially seen

4

by Dr. Goldstein in April 2013 complaining of bilateral knee and neck and back pain. (Tr. 419.) In his report, Dr. Goldstein noted that he reviewed Plaintiff's April 2011 MRI of his left knee, the October 2013 MRIs of both knees and his lumbar spine, and the November 2013 cervical spine MRI. (Tr. 420.) A physical examination of Plaintiff's left knee revealed mild effusion and varus alignment; passive range of motion 0 to 135 degrees and soreness; tenderness of the medial joint line with crepitus; a positive McMurray's test; and pain with squatting and quad setting. (Tr. 419.)

Dr. Goldstein diagnosed internal derangement of the knee joint, chondromalacia, medial meniscus tear, cervical herniated discs, lumbago, cervalgica, herniated lumbar discs, obesity, shoulder tendinitis, wrist pain, and psoriasis. (Tr. 421.) He explained that Plaintiff "continues to have pain, numbness and weakness down the left leg and arm," has "continual pain, restricted range of motion, difficulty with activity of daily living," and has "difficulty and restrictions with standing, waking, bending, lifting, twisting, pulling, pushing, stairs, squatting, driving and all activity of daily living." (Id.) He also stated that Plaintiff "had difficulty carrying more than 5 pounds and is unable to perform this in a repetitive fashion, cannot reach above overhead as well as difficulty with squatting and bending." (Id.) He noted that Plaintiff "has undergone extensive therapy as well as left knee surgery" and "has been on pain medication, Tramadol." (Id.)

**3. Marc Parnes, D.O.**

On April 29, 2015, Dr. Parnes completed a narrative report in which he explained that he has treated Plaintiff since 2013 for bilateral knee, neck, and lower back pain. (Tr. 393.) Physical examination revealed nearly full muscle strength, and strain and spasm of the cervical spine with limited ranges of motion in Plaintiff's neck, lumbar spine, and legs. (Tr. 393.) Straight leg raising was also positive in the right and left legs at 60 degrees. (Id.) Dr. Parnes also noted a ¾ inch atrophy of the left calf muscle and ¼ inch atrophy of the left bicep. Dr. Parnes noted that he

5

reviewed the October 2013 MRIs of Plaintiff's knees and lumbar spine, the November 2013 MRI of the cervical spine, and two EMGs from 2013. (Tr. 394.)

Dr. Parnes diagnosed traumatic lumbosacral derangement, disc herniation, and radiculopathy with sprain, strain, and spasm, cervical derangement, disc herniation, and radiculopathy, left knee derangement with focal tear of the medial meniscus, and a right knee internal derangement. (Tr. 394.) He recommended physical therapy and Celebrex. Dr. Parnes opined that Plaintiff could sit for less than four hours in an eight-hour workday, stand and walk for less than two hours, and that he required frequent periods of rest requiring him to lie down. (Tr. 395.)

On May 16, 2015, Dr. Parnes completed a medical assessment in which he opined that Plaintiff was limited to sitting for less than four hours in an eight-hour workday and to standing or walking for less than two hours. (Tr. 287.) He also opined that Plaintiff was limited to lifting and carrying less than five pounds. Finally, Dr. Parnes stated that Plaintiff would require frequent breaks during the workday and that he would be absent from work two or more days per month.

### 4. Michael Hearns, M.D.

On May 30, 2015, Dr. Michael Hearns completed a narrative report, noting that he treated Plaintiff initially in April 2013 for complaints of chronic neck, lower back, and bilateral knee pain. (Tr. 430–34.) Plaintiff complained of headaches, jaw pain, coughing episodes, and fatigue. His pain was exacerbated by sitting, standing, and walking. (Tr. 431.) Flexion of the lumbar spine was performed to 48 degrees and was accompanied by muscle spasm. (Tr. 432–33.) Plaintiff reported that he could stand and walk for less than 2 hours and that he can sit for less than 4 hours. (Tr. 431.) He could lift between five and ten pounds for 1/3 to 2/3 of the workday. (Id.) He was prescribed Celebrex and Ultram for pain. (Id.) Dr. Hearns completed a medical assessment in

6

which he opined that Plaintiff was limited to standing and walking less than two hours in an eight-hour workday and sitting less than four hours. (Tr. 428–29.)

**5. Steven Golub, M.D.**

Dr. Steven Golub, a non-examining medical expert, testified at the Plaintiff's administrative hearing. (Tr. 72–77.) Dr. Golub testified that Plaintiff had severe lumbar and cervical impairments, diagnostic testing of Plaintiff's lower back and neck showed radiculopathy, but not neuropathy, and nerve conduction testing was negative. (Tr. 73.) Dr. Golub noted that "[Plaintiff's] knee problem actually started a while back" and that a 2007 MRI of Plaintiff's knee showed a torn meniscus. (Tr. 73–74.) He also noted that "[t]here was a notation in April 2010 that [Plaintiff] had patella subluxation [in his left knee]." (Tr. 74.)

Dr. Golub opined that Plaintiff "can lift up to 20 pounds occasionally and 10 pounds frequently." (Tr. 74.) The ALJ then asked Dr. Golub if Plaintiff "could sit, stand, and walk for six hours as long as he gets to move around?" (Id.) Dr. Golub responded "four to six hours," and added that "[Plaintiff] would need breaks" and that "sometimes these types of pains change from day to day depending on how active or inactive [Plaintiff] is, so it's hard to know[;] but I would say four to six is a reasonable estimate." (Tr. 74–75.) The ALJ confirmed with Dr. Golub that the four to six hour estimate is for sitting, standing, and walking. (Tr. 75.) Dr. Golub then noted that "[Plaintiff] would have to sit periodically depending on the extent of the symptoms on a given day." (Tr. 75.)

Plaintiff's attorney then questioned Dr. Golub about the October 2013 MRI of Plaintiff's right knee, noting that it was exhibit 18F in the record. (See Tr. 75–77.) Dr. Golub responded, "Oh, okay. Well, here's the problem. I only got up to 15F in my exhibits." (Tr. 75.) The ALJ then said that "18F is pretty much consistent with the other ones." (Id.) Plaintiff's attorney then

7

said that "[he] was just making mention of it because [Plaintiff's right knee] is the good knee, and it's still showing a tear" and the ALJ confirmed that "[Plaintiff] [had] . . . a partial tear . . . [and] [m]ild to moderate soft tissue swelling [and] [n]o evidence of fracture, strain, lateral, collateral ligament." (Tr. 76–77.) The ALJ then asked Dr. Golub if his assessment was consistent with the right knee MRI, to which Dr. Golub responded "yes." (Tr. 77.) Plaintiff's attorney had no follow-up questions. (Id.)

**D. The ALJ's Decision**

The ALJ issued his decision on June 24, 2015, applying the five-step process described below, pursuant to 20 C.F.R. § 404.1520(a). (Tr. 42–56.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 13, 2011. (Tr. 44.) At step two, the ALJ found that Plaintiff's internal derangement of both knees, left knee arthroscopic partial medial meniscectomy, obesity, and herniated cervical and lumbar intervertebral discs with radiculopathy were severe impairments. (Tr. 44–45.) At step three, the ALJ determined that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of any of the regulations' listed impairments. (Tr. 45.) Specifically, the ALJ considered Listing 1.02 for major dysfunction of a joint due to any cause and Listing 1.04 for disorders of the spine. (Id.)

The ALJ then addressed step four, first considering Plaintiff's residual functional capacity ("RFC"). An RFC determination identifies what work a claimant can still perform, despite his limitations. See C.F.R. § 404.1545(a). The ALJ found that Plaintiff retained the RFC to perform light work,[2] finding that Plaintiff could: lift twenty pounds occasionally and ten pounds frequently;

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (July 2, 1996).

8

sit for eight hours in an eight-hour workday but would have to get up occasionally to stretch and stand for five minutes per hour; stand and walk for four hours in an eight-hour workday; and occasionally climb, stoop, kneel, crouch, and crawl and frequently balance. (Tr. 46.) He also found that Plaintiff had no manipulative, visual, communicative, or environmental limitations. (Id.)

Based on the RFC, the ALJ concluded that Plaintiff is not capable of performing his past relevant work as a police officer. (Tr. 54.) At step five, after considering the testimony from a vocational expert, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy, such as a folding machine operator, information clerk, and a page. (Tr. 55.) Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act from his alleged onset date through the date of his decision. (Id.)

## II. DISCUSSION

### A. Social Security Disability Standard

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. See 20 C.F.R. § 416.920. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and

(4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. § 416.920(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

## B. Scope of Review

In reviewing a denial of disability benefits by the SSA, it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

10

Conversely, a remand for further proceedings is warranted when the Commissioner has failed to provide a full and fair hearing, to make necessary findings, or to have correctly applied the law and regulations. 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."); see Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999). Remand is also appropriate when an ALJ overlooks an important piece of evidence. See 42 U.S.C. § 405(g) (permitting the court to order the Commissioner to review additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"); see also Carnevale v. Gardner, 393 F.2d 889, 890–91 (2d Cir. 1968) (directing remand to allow the Secretary to consider a major piece of evidence ignored by the hearing examiner).

**C. The ALJ's RFC Determination**

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No. 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)). In determining a claimant's RFC, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). An RFC

11

determination must be affirmed on appeal where it is supported by substantial evidence in the record. Barry, 606 F. App'x at 622 n.1.

"[A]n ALJ's RFC determination 'must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence.'" Campbell v. Astrue, 465 F. App'x 4, 6 (2d Cir. 2012) (quoting Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, "we do not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). Only "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). For example, the Second Circuit has explained that "[w]here an ALJ's [RFC] analysis . . . affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed." Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id.

Plaintiff argues that remand is warranted because the treating source opinions from Dr. Goldstein, Dr. Parnes, and Dr. Hearns are "well supported by the record" and "no substantial medical evidence contradicts the opinions of [Plaintiff's] three treating physicians that he lacks the minimum sitting, standing, and walking capacities necessary to perform sedentary work, let alone

light work as found by the [ALJ]." (Pl.'s Mem. 1, 19.) Plaintiff also contends that the ALJ erred by giving great weight to the opinion of Dr. Golub, a non-examining doctor "who admittedly did not have access to all the critical medical tests and treatment notes supporting [Plaintiff's] claim." (Pl.'s Mem. 1.) The Court finds that the ALJ erred in assigning great weight to the opinion of Dr. Golub, a non-examining medical expert who did not review the entire record. Accordingly, the Court remands this action to allow the ALJ to obtain and consider the opinion of a non-examining medical expert who has reviewed the entire medical record. In light of the remand on this issue, the Court does not reach the question of whether the ALJ provided "good reasons" for assigning controlling weight to the treating physicians' opinions and whether the ALJ properly gave those opinions only limited weight.

D. Analysis

**1. The ALJ Erred by Assigning Great Weight to Dr. Golub's Opinion**

The ALJ gave great weight to Dr. Golub's opinion, who testified that Plaintiff can lift twenty pounds occasionally and ten pounds frequently, can stand/walk/sit for four to six hours in a day with breaks, and would need to sit periodically, because it "is consistent with the record as a whole, which shows that [Plaintiff] has received conservative treatment, still drives, has elected not to try epidural steroid injections, does not require an assistive device to walk, and has been on the same prescription pain medication for most of his treatment history." (Tr. 51.)

Plaintiff argues that the ALJ erred by giving Dr. Golub's opinion "great weight" because he did not examine Plaintiff and did not review the entire record. Dr. Golub, who testified at Plaintiff's hearing telephonically, stated that he "only got up to 15F in [his] exhibits" when Plaintiff's attorney questioned him about the October 2013 MRI of Plaintiff's right knee, which

13

was marked as exhibit 18F.³ (Tr. 75–76.) Consequently, Dr. Golub did not review: (1) the 2013 MRIs of Plaintiff's spine, cervical spine, and knees, (Tr. 372–75, 377–79, 380–82); (2) the June 2014 EMG of Plaintiff's lower extremities, (Tr. 387–90); (3) Dr. Parnes' narrative report and treatment notes, (Tr. 393–417); (4) Dr. Mitchell's narrative report, (Tr. 419–22); and (5) Dr. Hearns' narrative report and treatment notes, (Tr. 430–52.). Plaintiff characterizes this evidence as "critical documents that support [Plaintiff's] disability claim" and contends that "the assignment of significant weight to a physician who has not reviewed the record is plain legal error." (Pl.'s Reply Mem. 5.)

The Court agrees. The ALJ erred in assigning great weight to a non-examining medical expert's opinion who did not review a large portion of Plaintiff's medical records. The Second Circuit has found remand appropriate when an ALJ relies on a non-examining medical expert to override the opinions of treating physicians and the non-examining medical expert does not consider the entirety of the Plaintiff's medical records. See Gunter v. Comm'r of Soc. Sec., 361 F. App'x 197, 200 (2d Cir. 2010) (summary order) (remanding where a non-examining physician "made his assessment without reviewing the complete record of [the Plaintiff's] medical history.") (internal citation omitted); see also Hidalgo v. Bowen, 822 F.2d 294, 298 (2d Cir. 1987) (remanding where the ALJ overrode a treating physician opinion based on the opinion of a non-examining consultant who "did not have before him the complete medical records of the claimant," which included clinical findings supporting the treating physician's diagnosis). As the Second

---

³ When Dr. Golub stated that he did not review the October 2013 MRI of Plaintiff's right knee, the ALJ read the findings of that MRI into the record and asked Dr. Golub if that was still consistent with his opinion. (See Tr. 76–77.) Dr. Golub said that it was. (Tr. 77.) The ALJ did not err by reading the findings of this MRI to Dr. Golub over the phone, rather than providing him with a physical copy of the test results. See Abarzua v. Berryhill, 18-CV-640, 2019 WL 978658, at *1 (2d Cir. Feb. 27, 2019) (summary order); see also Richardson v. Perales, 402 U.S. 389, 400–401 (1971) (explaining that strict rules of evidence do not apply in Social Security hearings). However, because this case is being remanded on other grounds, the ALJ should ensure, on remand, that any non-examining expert receives copies of all relevant records, including the October 2013 MRI.

14

Circuit has explained, in such situations, "[c]onsideration of [the Plaintiff's] entire medical record[] might . . . alter[] [the non-examining physician]'s conclusions." Gunter, 361 F. App'x at 200 (citation omitted).

Here, Dr. Golub admitted that he reviewed only 15 of the 31 exhibits received into evidence. (See Tr. 76) ("Oh, okay. Well, here's the problem. I only got up to 15F in my exhibits."). The exhibits that Dr. Golub did not review included three MRIs, one EMG, and treatment notes from two of the treating physicians, Dr. Parnes and Dr. Hearns. Notably, although Dr. Golub did review certain earlier MRIs of Plaintiff's knees, Dr. Golub did not review any MRIs of Plaintiff's spine and cervical spine. Dr. Golub's opinion may have been different had he reviewed this evidence. See Hidalgo, 822 F.2d at 928.

Despite the error above, the Court will not grant Plaintiff's request to remand for calculation of benefits because the record is not entirely persuasive with respect to Plaintiff's alleged disability. See Williams v. Apfel, 204 F.3d 48, 50 (2d Cir. 2000). Instead, the Court remands for further consideration consistent with this opinion.

On remand, the Commissioner should, at the very least, obtain an opinion from a non-testifying medical expert who has considered all the relevant records. Of course, "[t]he Commissioner remains free to direct such further medical examination and analysis as may be appropriate." Tarsia v. Astrue, 418 F. App'x 16, 19 (2d Cir. 2011) (summary order). The Commissioner must then assess the proper weight for each of the medical opinions in the record and determine Plaintiff's RFC.

### 2. One of the Four Reasons the ALJ Provided For Not Assigning Controlling Weight to the Treating Physicians' Opinions is Deficient

An ALJ's decision regarding the weight to be accorded to each medical opinion in the record and how to reconcile conflicting medical opinions is governed by the treating physician

rule. 20 C.F.R. § 404.1527(c)(2). According to the treating physician rule, if a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ will credit that opinion with "controlling weight." 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

However, an ALJ may discount a treating physician's opinion when that opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record, or the evidence otherwise supports a contrary finding. See 20 C.F.R. § 404.1527(c)(2). The ALJ is required to give "good reasons" in support of the determination. See Schaal v. Apfel, 134 F.3d 496, 503–04 (2d Cir. 1998).

Dr. Goldstein, Dr. Parnes, and Dr. Hearns opined that Plaintiff is limited to less than four hours of sitting, less than two hours of standing and/or walking, and may only lift and carry five pounds or less. (See Tr. 284–85, 287–88, 393–95, 419–22, 428–34.) The ALJ assigned these opinions little weight, reasoning that they were contradicted by the record as a whole and the non-examining medical expert's opinion, as well as inconsistent with the Plaintiff's conservative course of treatment and daily activities. (Tr. 51.) Plaintiff contends that the ALJ improperly discredited this opinion because it is supported, not contradicted, by substantial evidence in the record. (Pl.'s Mem. 19.) Plaintiff argues that the treating physicians' opinions should have been given controlling weight because their treatment notes, and the objective medical evidence they relied on in rendering their opinions, show restrictions and limitations in Plaintiff's neck, lower back, and knees that warrant a more restrictive RFC determination. (Pl.'s Mem. 18 referring to Tr. 256–81, 393–417; 292–321, 418–22.)

Three of the four reasons the ALJ provided as to why the treating physicians' opinions were not entitled to controlling weight—namely, that the treating physicians' opinions were inconsistent with: (1) the record as a whole; (2) Plaintiff's conservative course of treatment; and (3) Plaintiff's daily activities—appear to be supported by the record and may, even standing alone, constitute "good reasons" for not granting those opinions controlling weight. However, the Court does not reach this question because the fourth reason provided by the ALJ—that the treating physicians' opinions were inconsistent with the non-examining medical expert's opinion—is deficient for the reasons described above. Accordingly, upon remand, the ALJ should determine, in light of any new evidence accepted into the record, whether "good reasons" exist to not grant the opinions of the treating physicians controlling weight. Similarly, because the ALJ relied on Dr. Golub's opinion in giving only limited weight to the opinions of the treating physicians, the ALJ must, on remand, reconsider the weight afforded to those opinions after reviewing any new evidence introduced into the record.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's motion for judgment on the pleadings; DENIES the Commissioner's cross-motion; and REMANDS the case for further proceedings consistent with this opinion. The Clerk of Court is directed to close the case and enter judgment accordingly.

**SO ORDERED.**

Dated: March 7, 2019
Central Islip, New York

                     _____/s/ (JMA)_____
                     JOAN M. AZRACK
                     UNITED STATES DISTRICT JUDGE